# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**HABITAT EDUCATION CENTER,**
**DAVID ZABER,**
**RICARDO JOMARRON,**
**DON WALLER,**
**MARK LEACH,** and
**ENVIRONMENTAL LAW AND POLICY CENTER,**

     **Plaintiffs,**

   **v.**         **Case No. 08-C-627**

**UNITED STATES FOREST SERVICE,**
**GAIL R. KIMBELL,** *Chief of the US Forest Service,*
**THOMAS J. VILSACK[1],** *Secretary of the US Dept of Agriculture,* and
**KENT P. CONNAUGHTON,** *Regional Forester for US Forest Service Eastern Region,*

     **Defendants.**

## DECISION AND ORDER

### I. PROCEDURAL HISTORY

   On July 21, 2008, Habitat Education Center, David Zaber, Ricardo Jomarron, Don Waller, Mark Leach, and Environmental Law and Policy Center ("ELPC"), referred to here collectively as "Habitat Education Center," filed a complaint, (Docket No. 1), against the United States Forest Service, Gail R. Kimbell, Chief of the US Forest Service, Ed Schafer, Secretary of the US Dept of Agriculture, and Kent P. Connaughton, Regional Forester for US Forest Service Eastern Region, referred to here collectively as "the Forest Service."  The complaint alleges that the Forest Service violated the Forest Service Decisionmaking and Appeals Reform Act ("ARA"), 16 U.S.C. § 1612

---

[1] During the pendency of this matter, Thomas J. Vilsack succeeded Ed Schafer as the Secretary of the United States Department of Agriculture and therefore, pursuant to Fed. R. Civ. P. 25(d), is automatically substituted as a party. The caption is amended accordingly.

Note, and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 553-559 and 701-706, by dismissing the plaintiffs' administrative appeal without substantive review. As relief, in part, the plaintiffs seek this court to order the Forest Service to conduct a substantive review of the plaintiffs' appeal and to enjoin certain activities related to the relevant proposed project until this appeal is completed.

Upon all parties consenting to the full jurisdiction of a magistrate judge, this matter was reassigned to this court. (Docket No. 21.) On December 1, 2008, this court denied without prejudice the parties' opposing motions for summary judgment. (Docket No. 28.) In that Decision and Order, the court resolved various issues but was unable to resolve what has now become the determinative issue: whether or not the Forest Service mailed the notice of DEIS availability ("NOA") as required by the ARA. (Docket No. 28 at 17-18.) The court noted that the ambiguity it found in the record regarding this mailing issue might be resolved simply by submitting a clarifying affidavit of Lois Pfeffer ("Pfeffer"), the person responsible for mailing the NOA.

Two days after the court issued its Decision and Order, the defendants filed a renewed motion for summary judgment that was supported by a new affidavit of Pfeffer. (Docket No. 32.) The same day, the plaintiffs filed a motion for a temporary restraining order and a preliminary injunction. (Docket Nos. 34, 40.) The court granted the plaintiffs' motion for a temporary restraining order on December 4, 2008, (Docket No. 38), and following a status conference with the parties, (Docket No. 47), a hearing on the motion for a preliminary injunction was held on December 30, 2008, (Docket No. 52.) Following that hearing, the court granted the plaintiffs' motion for a preliminary injunction. (See Docket Nos. 53, 58, 59.) On January 21, 2009, this court held a status conference with the parties. (Docket No. 60.) The court agreed with the parties that an evidentiary hearing was the best way in which to resolve the remaining issue regarding mailing. An evidentiary hearing was held on February 26, 2009, (Docket No. 65, 66). A summary of the

evidence adduced at that hearing is set forth below. The parties have now renewed their respective motions for summary judgment. The pleadings on these motions are closed and this matter is ready for resolution.

## II. FACTS

The following relevant facts are essentially uncontested. The Chequamegon-Nicolet National Forest covers approximately 1.5 million acres in northern Wisconsin and consists primarily of northern hardwood, mixed conifer and aspen trees, along with numerous rivers, lakes and other waterways. (Plaintiffs' Proposed Findings of Fact, Docket No. 18-3, ¶3.) In 2003, the Forest Service proposed and approved six timber sales in the Chequamegon-Nicolet National Forest, identified as the Cayuga, Gilman Tornado, Hoffman-Sailor West, McCaslin, Northwest Howell, and Sunken Moose projects. (Docket No. 18-3, ¶6.) The plaintiffs have challenged numerous of these projects. (Docket No. 18-3, ¶7; see also E.D. Wis. Case Numbers, 03cv1023, 04cv254, 07cv578, 08cv43.) In 2005, the Forest Service proposed nine additional timber sales in the Chequamegon-Nicolet National Forest, identified as the Boulder, Fishel, Fishbone, Long Rail, Twentymile, Medford Aspen, Camp Four, Northwest Sands and Grub Hoe projects. (Docket No. 18-3, ¶8.)

The present dispute involves the Fishel Project, which encompasses approximately 85,000 acres, includes more than 185 miles of road construction and reconstruction, and proposes 5,517 acres of new logging. (Docket No. 18-3, ¶¶9-10.) The administrative process for the Fishel Project began on March 22, 2006, when the Forest Service issued a Notice of Intent to Prepare an Environmental Impact Statement. (Docket No. 18-3, ¶44.) Parties interested in the project were able to request a package of scoping materials. (Defendants' Proposed Findings of Fact, Docket No. 22-3, ¶2.) Included in this package was a form entitled "Mailing Update and Preferences/Comment Sheet," which allowed interested individuals to specifically request that a copy of the Draft

Environmental Impact Statement ("DEIS") be mailed to them. (Docket No. 22-3, ¶2.) The plaintiffs were mailed this package but did not return the enclosed form requesting to be mailed a copy of the DEIS. (Docket No. 22-3, ¶¶3-4.)

During the scoping processes, plaintiffs filed comments on the Fishel Project to be addressed during the development of the Fishel Project DEIS. (Docket No. 18-3, ¶45.)

On May 15, 2007, the Forest Service issued its DEIS for the Fishel Project. (Docket No. 18-3, ¶46.) The same day, it mailed a notice of DEIS availability ("NOA") to parties that had expressed interest in receiving it. (Docket No. 22-3 ¶8.) Plaintiff Environmental Law & Policy Center was on the mailing list for the NOA. (Docket No. 22-3, ¶10.) Also on May 15, 2007, the DEIS was posted on the Chequamegon-Nicolet National Forest website. (Docket No. 22-3, ¶9.) The NOA was also published in the Federal Register on May 25, 2007, and the Milwaukee Journal Sentinel on May 30, 2007. (Docket No. 22-3, ¶¶10-11.) The NOA specifically set July 9, 2007 as the deadline for receipt of all comments. (Docket No. 22-3, ¶13.)

The plaintiffs contend that they never received a mailed notice from the Forest Service that the DEIS was issued. (Docket No. 18-3, ¶47.) On July 16, 2007, Lois Pfeffer ("Pfeffer"), an employee of the Forest Service, called plaintiffs' counsel and informed counsel that the comment period for the Fishel DEIS ended on July 9, 2007. (Docket No. 18-3, ¶¶48-49.) Pfeffer asked whether the plaintiffs intended to submit comments and indicated that the plaintiffs could still submit comments. (Docket No. 18-3, ¶51.) Plaintiffs' counsel informed Pfeffer that the plaintiffs had intended to submit comments and would do so on an expedited schedule. (Docket No. 18-3, ¶51.) Plaintiffs' counsel also contacted Brian Quinn ("Quinn"), the Chequamegon-Nicolet National Forest NEPA Compliance, Appeals, and Litigation Officer, and expressed the plaintiffs' interest in submitting comments on the Fishel DEIS. (Docket No. 18-3, ¶52.) Quinn responded that comments may be submitted at any time and that plaintiffs' appeal eligibility based upon submission of

comments would be determined by the Appeal Deciding Officer at the Regional Forester level."
(Docket No. 18-3, ¶53.) Within two weeks, the plaintiffs submitted their comments. (Docket No.
18-3, ¶54.)

The Forest Service's February 2008 Final Environmental Impact Statement ("FEIS") and
Record of Decision ("ROD") approving the Fishel timber sale project purports to consider
Plaintiffs' comments. (Docket No. 18-3, ¶55.) On April 22, 2008, within the 45-day statutory appeal
period, the plaintiffs filed a written appeal of the Fishel FEIS and ROD with the Regional Forester
for the United States Forest Service Eastern Region. (Docket No. 18-3, ¶¶58-59.)

On May 5, 2008, Kent Connaughton, Regional Forester for the United States Forest Service
Eastern Region, dismissed the plaintiffs' administrative appeal without any substantive review.
(Docket No. 18-3, ¶64.) The reason stated for the dismissal of the administrative appeal was the
plaintiffs' failure to submit comments during the applicable comment period for the Fishel Project
DEIS. (Docket No. 18-3, ¶65.) The plaintiffs submitted a request for reconsideration, which was
denied on June 24, 2008. (Docket No. 18-3, ¶¶66-67.)

## III. EVIDENTIARY HEARING SUMMARY

### A. Lois Pfeffer

Pfeffer lives and works in Powell, Wyoming and is an environmental coordinator for the
USDA's Forest Service Team Enterprise Unit. (Tr. 6.) She works alone in this office. (Tr. 8, 10.)
She has worked for the Forest Service since 1987 and in this position since 1993. (Tr. 6.) As part of
her job duties she does project analysis including developing the scoping documents, preparing
draft analysis documents, receiving public comments, and addressing various issues that may come
up as part of a project. (Tr. 6-7.) However, generally she has worked as part of a larger team; this
was the first big mailing she had to complete on her own. (Tr. 17.) She has been involved in
various projects throughout her career with the Forest Service. (Tr. 7.) With respect to the Fishel

project, when comments came in, she recorded the respondent's address and noted the form in which the person requested to receive additional information. (Tr. 7-8.) For example, some interested parties requested that they be mailed a full paper copy of the materials, while others wanted to receive the information on a CD, while others wanted only e-mail notification and would access the materials on the website. (Tr. 8.)

Pfeffer was responsible for getting all the relevant documents duplicated for the Fishel project and ensuring that the materials were mailed to parties who requested notice. (Tr. 8-9.) When she received the duplicated letters back from the printer, she folded them, placed them into envelopes, addressed the envelopes using hand-typed mailing labels, (Tr. 13-14), put first class postage on the envelopes, sealed them, walked them around the block to the Post Office, and placed them in the out-of-town mail slot. (Tr. 8-9.) She cross-checked as she went to make sure she did not miss anyone on the list. (Tr. 21.) This was the only mailing project she was working on at the time. (Tr. 17.) The Environmental Law and Policy Center had responded to the scoping and thus was on the Pfeffer's list to receive the NOA. (Tr. 9.) The letter to the ELPC was addressed to the organization generally and did not bear the name of any particular person. (Tr. 12.)

### B. Katherine Dixon

Over the objection of the defendants, the court received the testimony of Katherine Dixon ("Dixon"), one of the attorneys for the plaintiffs and the staff attorney at the ELPC who handles forestry issues for the organization. (Tr. 25-26.) She testified that as part of the ELPC's mail handling procedures, when mail is received, if it is addressed to one of the office's 35 employees, it will be placed in that employee's mail slot. If it addressed to the organization generally, the receptionist will open it and determine the appropriate person to whom it should be sent. (Tr. 27.) Mail from the Forest Service will generally be addressed to the organization's executive director,

Howard Learner ("Learner"), or to Dixon. (Tr. 27.) As for mail from the Forrest Service that is addressed to the organization generally, the receptionist knows to give it to Dixon. (Tr. 27.)

After having received a call from the Forest Service indicating that the comment period for the Fishel project had closed and inquiring whether ELPC intended to submit comments, Dixon searched her personal files, Learner's office, and Learner's files, and could not find the NOA. (Tr. 32-33.) According to Dixon, the receptionist also could not recall having received this piece of mail. (Tr. 33.)

## IV. SUMMARY JUDGMENT STANDARD

Although an evidentiary hearing was held in this matter, it is important to emphasize that this matter is before this court on the parties' opposing motions for summary judgment. Given the procedural history of this case and the fact that a single discrete question was at issue, the court determined that rather than addressing this issue through affidavits or depositions, the most efficient means of resolving the parties' motions was an evidentiary hearing whereby all parties, as well as the court, were able to ask questions. Thus, it is important to emphasize that the court is not now acting as a finder of fact. Matters such as questions of credibility are not within the court's purview at this time. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993). Rather, the question before this court is whether there are any genuine issues of material fact and whether the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The plaintiffs contend that the court's analysis should be guided by the "arbitrary and capricious" standard that applies to claims under the APA. (Docket No. 68 at 2-4.) The court disagrees with the plaintiffs that this is the proper standard to apply in this case. The issue presently before this court is not the defendants' compliance with the APA, but rather the defendants' compliance with the ARA. Thus, the court finds that the Rule 56(c) standard is the appropriate one to apply here.

7

As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## V. ANALYSIS

In relevant part, the ARA states:

(a) In general. In accordance with this section, the Secretary of Agriculture, acting through the Chief of the Forest Service, shall establish a notice and comment process for proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans developed under the Forest and Rangeland Renewable Resources Planning Act of 1974 (16 U.S.C. 1601 et seq.) and shall modify the procedure for appeals of decisions concerning such projects.

(b) Notice and comment.

(1) Notice. Prior to proposing an action referred to in subsection (a), the Secretary shall give notice of the proposed action, and the availability of the action for public comment by-

8

      (A) promptly mailing notice about the proposed action to any person who has requested it in writing, and to persons who are known to have participated in the decisionmaking process; and,

      (B)

            (i) in the case of an action taken by the Chief of the Forest Service, publishing notice of action in the Federal Register; or

            (ii) in the case of any other action referred to in subsection (a), publishing notice of the action in a newspaper of general circulation that has previously been identified in the Federal Register as the newspaper in which notice under this paragraph may be published.

      (2) Comment. The Secretary shall accept comments on the proposed action within 30 days after publication of the notice in accordance with paragraph (1).

      (c) Right to appeal. Not later than 45 days after the date of issuance of a decision of the Forest Service concerning actions referred to in subsection (a), a person who was involved in the public comment process under subsection (b) through submission of written or oral comments or by otherwise notifying the Forest Service of their interest in the proposed action may file an appeal.

16 U.S.C. § 1612 Note.

      In light of this court's prior Decision and Order, (Docket No. 28), only subsection (b)(1)(A) is at issue, i.e. did the Forest Service comply with the ARA by "promptly mailing notice about the proposed action to" the ELPC?  In making this determination, the court must first decide whether it should apply the "presumption of regularity" to the facts of this case.

      The "presumption of regularity" supports official acts of public officers. In the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties. The doctrine thus allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary.

Butler v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001) (internal citations omitted); see also United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926).

In the present case, in the parties' respective discussions regarding the applicability of a presumption in this case, appear to be conflating two distinct presumptions. The presumption that is at issue here is the presumption that public officers will properly discharge their duties. If applied in this case and not rebutted by the plaintiffs, then the court must conclude that the Forest Service complied with the ARA and mailed the NOA.

The separate but distinct presumption also raised is that a properly addressed item, placed into the mail with proper postage affixed, will be received by the addressee. Even though this case does focus upon a particular piece of mail and this mailing/receipt presumption is frequently at issue in many of the cases cited by the parties, this presumption is not the one that underlies the determinative issue before this court.

This mailing/receipt presumption might be relevant if the ARA required actual receipt by the ELPC; however, it is mere mailing, not receipt, that the ARA requires. Thus, to determine the mailing issue in this case, the court need not analyze the procedures of the Postal Service, but rather must consider the procedures of the Forest Service relating to whether the NOA was mailed to ELPC.

Although the presumptions are distinct, the court finds that the analysis applicable to the common law mailing/receipt presumption to be insightful to the question presently before this court. For example, in Godfrey v. United States, 997 F.2d 335 (7th Cir. 1993), a taxpayer sought payment of interest on a tax refund he had not received. The relevant statute required the refund to be "tender[ed]" and thus the court held that without more, a tax transcript demonstrating that the taxpayer was entitled to a refund was insufficient to demonstrate that the refund was mailed, so as to raise the presumption that a properly mailed item was received by the addressee and thus tendered to the taxpayer. Id. at 338-39. The court noted that "the government failed to submit to the

district court an authoritative explanation of IRS procedures which could provide a presumption of regularity, thus allowing a reasonable inference the refund check was mailed." Id. at 338.

The court held that in order to invoke the presumption "the government could either present evidence of actual mailing such as an affidavit from the employee who mailed the [item], or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the [item] was properly addressed and mailed." Applied to the present case, the court finds that either method would present an appropriate means by which the government can raise the presumption of regularity that an administrative agency's actions with respect to mailing were followed.

As for the plaintiffs' obligation to rebut this presumption, should the court conclude that the government sufficiently raised it, again referring to the analogous context of the presumption relating to receipt of mail, other courts have held that evidence of non-receipt is sufficient to rebut this presumption. See In re Yoder Co., 758 F.2d 1114, 1118 (6th Cir. 1985) (citing McKentry v. Secretary of HHS, 655 F.2d 721 (6th Cir. 1981); Baldwin v. Fidelity Phenix Fire Insurance Co., 260 F.2d 951, 953 (6th Cir. 1958)); see also Simpson v. Jefferson Standard Life Insurance Co., 465 F.2d 1320, 1323 (6th Cir. 1972). However, in the Seventh Circuit, a mere denial of receipt is insufficient to rebut this mailing/receipt presumption. McCarthy v. Option One Mortg. Corp., 362 F.3d 1008, 1011 (7th Cir. 2004) (citing Godfrey, 997 F.2d at 338). For example, the presumption may be rebutted if the government misleadingly addressed the mailed item and subsequently conceded that the intended recipient never received the item, Godfrey, 997 F.2d at 338, fn. 3 (citing Doolin, 918 F.2d at 19), or when there is an absence of a return receipt from a certified mailing, id. (citing McPartlin v. Commissioner, 653 F.2d 1185, 1191 (7th Cir. 1981)).

Initially, the Forest Service presented the declaration of Pfeffer wherein she stated that she "arranged for the NOA for the Fishel Project DEIS to be mailed to those individuals listed on the

mailing list." In the court's opinion, this ambiguous statement was insufficient to raise any presumption, and thus the court found it necessary to initially deny without prejudice the parties' motions for summary judgment. Subsequent testimony has made clear that Pfeffer has no specific recollection about mailing the materials to ELPC, which would establish actual mailing. Therefore, the court must look towards the alternative approach to see if there is evidence of the Forest Service's, or perhaps more accurately Pfeffer's, policies and regular practices regarding mailing to determine whether a presumption of regularity exists.

It is the conclusion of this court that the government has sufficiently raised the presumption of regularity. The court further concludes that the plaintiffs have failed to rebut the presumption. Accordingly, the court shall grant the defendants' renewed motion for summary judgment. Pfeffer testified as to the procedures she followed in preparing the mailing. The list from which Pfeffer typed the mailing labels was received as Exhibit 1, and the ELPC is included on this list. This evidence regarding the Forest Service's procedures is sufficient to raise the presumption that the Forest Service complied with the ARA and mailed the NOA to the ELPC.

The primary way that the plaintiffs attempt to rebut the presumption is their contention that the NOA was never received by the ELPC. To support their contention, plaintiffs offered the testimony of Katherine Dixon. Of course, since it is not possible to affirmatively prove a negative, i.e. non-receipt, Dixon's testimony attempts to establish this through the "regularity" of the ELPC's office procedures. But Dixon's testimony attempting to establish non-receipt will not carry plaintiffs' burden of rebuttal. Just as testimony of non-receipt is insufficient to rebut the presumption that an item placed in the mail is received, McCarthy, 362 F.3d at 1011 (citing Godfrey, 997 F.2d at 338), so too is it insufficient to rebut the presumption that an administrative agency followed its standard procedures and mailed an item as required by statute.

The plaintiffs also point to testimony elicited from Lois Pfeffer that a "Neil Paulson" sent an email asking to receive the Fishel Draft EIS. (<u>See</u> Exhibit 2.) Because Neil Paulson was already on the mailing list, the plaintiffs contend that this subsequent request indicates that he also did not receive the documents, thus raising an inference that since two unrelated persons on the mailing list did not receive the materials, the presumption that the materials were mailed is rebutted. However, plaintiffs' attempt to raise this inference is not supported by the evidence. The evidence shows that Mr. Paulson was included on the list as "Neil and Pat Paulson" and in his email he requests to receive all subsequent correspondence at the same address but addressed only to himself. There is nothing in the email that indicates that Mr. Paulson did not receive any prior correspondence, but rather he was simply seeking to change the person to whom correspondence was to be addressed.

Finally, the plaintiffs point to certain alleged inefficiencies regarding the manner in which Pfeffer conducted the mailing. For example, that the mailing process involved "multiple lists, multiple types of mailing, and multiple mailings at a time, and a number of steps must be done by hand with no administrative support and apparently no follow-up checklist to ensure that every step is carried out correctly." (Docket No. 68 at 6-7.) A review of the record indicates that certain of the plaintiffs' contentions lack factual support. Pfeffer testified that the Fishel project was the only mailing she was working on at the time. (Tr. 17.) Further, although there was no "follow-up checklist," Pfeffer did testify at various points that she cross-referenced to ensure that she did not inadvertently omit someone from the list. (Tr. 21-22.) Although there were multiple lists, multiple types of mailings in that certain individuals requested only the NOA, while others requested to receive the DEIS in either paper or electronic format, and a number of the steps were done by hand with no administrative support, the court does not find that these facts are sufficient to rebut the presumption that the Forest Service mailed the NOA. The final mailing list is in the administrative record, (Admin. R. at 217-22), and it is undisputed that ELPC, with its proper address, is included

on this final mailing list, (Admin R. at 220). This was not a particularly large mailing—according to Exhibit 1 it involved only 72 individuals. It was certainly well within the ability of a single person to manage. The court is not persuaded that there was anything "irregular" about a single person undertaking a 72 person mailing using multiple mailing lists. Therefore, the court concludes that the plaintiffs have failed to rebut the presumption of regularity.

## VI. CONCLUSION

For the reasons set forth above, the defendants have presented sufficient evidence to raise the presumption of regularity that the Forest Service complied with the ARA by mailing the NOA to plaintiff ELPC. As a matter of law, the plaintiffs have failed to present sufficient evidence to rebut this presumption. Having previously resolved all other relevant issues in favor of the defendants, (Docket No. 28), the court's conclusion that the Forest Service complied with the ARA in mailing the NOA, eliminates all disputes as to material facts. Accordingly, the court will grant the defendants' renewed motion for summary judgment (Docket No. 32). In addition, having resolved this matter in the defendants' favor, the court shall vacate its previously issued preliminary injunction.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment, (Docket No. 32), is **granted** and the complaint and this action is dismissed. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Preliminary Injunction entered on January 13, 2009, (Docket No. 59), is hereby **vacated**.

Dated at Milwaukee, Wisconsin this 12th day of May 2009.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge